IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                )<br>            Plaintiff,          )<br>                                )<br>v.                              )<br>                                )<br>$39,440.00 in UNITED STATES    )<br>CURRENCY,                       )<br>                                )<br>            Defendant.          )<br>_____) | **CIVIL ACTION**<br><br>No.  13-1325-MLB |

**MEMORANDUM AND ORDER**

This case comes before the court on claimant David McDaniel's motion to suppress. (Doc. 30). The motion has been fully briefed and is ripe for decision. (Doc. 32).[1]

On September 4, 2013, plaintiff, the United States of America, filed a complaint seeking forfeiture of defendant currency that was seized on May 1, 2013, during a traffic stop. On September 16, this court entered a warrant for the arrest in rem of defendant currency. McDaniel filed his claim as to the currency on October 25. (Doc. 6).

McDaniel moves for suppression of the defendant currency on the basis that plaintiff seized the currency in violation of his Fourth Amendment rights. The court held an evidentiary hearing on August 6, 2014.

**I.   Facts**

Kansas Highway Patrol Trooper JT Littrell was on patrol on Wednesday, May 1, 2013.  Trooper Lewis was riding along on patrol with

---

[1] McDaniel did not file a reply and the time for doing so has now passed.  D. Kan. R. 6.1.

Littrell who was parked in the median of Interstate 70. Littrell observed a maroon Chevrolet HHR heading west in the left lane but the HHR was not actively passing a vehicle in the right lane. Littrell entered the highway and caught up to the HHR. Littrell drove alongside the HHR for approximately one mile. The HHR then accelerated, activated the left hand signal, and pulled in front of Littrell to pass a semi-truck.

Littrell activated his emergency lights and the HHR pulled to the side of the highway. Littrell approached the passenger side and told McDaniel that he stopped him for driving in the left lane without actively passing a vehicle and cutting in front of his vehicle. Littrell asked McDaniel where they were going. McDaniel and his passenger, Ness, replied that they were going to Denver for a couple of days for a short trip. Ness stated that she wanted to learn to snowboard. Littrell testified that McDaniel was agitated during the stop. The video of the stop shows McDaniel repeatedly discussing his violation with Littrell. Littrell then tells McDaniel that he is going to give him a warning unless McDaniel talks himself into a ticket. Littrell testified that McDaniel had a calmer disposition after he told him he was only getting a warning. Littrell asked McDaniel for his driver's license and the registration for the vehicle. Littrell also asked Ness for her identification. During the stop, Littrell observed that the vehicle contained one duffle bag.

Littrell returned to his patrol vehicle and ran a check on McDaniel and Ness' driver's licenses. Littrell was told by dispatch that McDaniel had been arrested in 2009 for possession of marijuana.

Littrell wrote out a warning and delivered it to McDaniel.

-2-

Littrell told them that they were free to go. The video shows Littrell turn towards his patrol vehicle, take a couple of steps and then turn back around. Littrell immediately leaned back into the passenger window and asked if he could ask them some more questions. Littrell asked if they were going to Denver to buy weed. They were surprised and said no. Littrell asked if they had any drugs, guns or money in the HHR. Ness said that she did have some money. Littrell asked how much and she said that it was just spending money. Littrell then asked permission to search the HHR and both McDaniel and Ness refused to consent to a search. Littrell told them to remain in the HHR while he called for a drug dog to come to their location.[2]

McDaniel and Ness were detained until the drug dog arrived approximately nine minutes later. Littrell told McDaniel to move the HHR to a safer location and then asked them to get out of the HHR. They were both patted down for weapons. The drug dog jumped into the HHR during the search and "hit" on the center consol. The HHR was searched and Littrell found a cup with a few leaves in the consol. The troopers also seized the currency from a small fanny pack in the backseat.

**II.  Analysis**

Although forfeiture proceedings are civil in nature, they are not to be effectuated in derogation of one's constitutional rights. United States v. $3,799.00 in United States Currency, 684 F.2d 674, 677 (10th Cir. 1982). The government will be precluded from

---

[2] There was no direct testimony about the search performed by the drug dog. McDaniel's motion to suppress does not challenge the fact that the drug dog hit on the center consol of the vehicle. (Doc. 30).

introducing any evidence seized in violation of the Fourth Amendment to prove its claim of forfeiture.  Id.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  Because an ordinary traffic stop is "more analogous to an investigative detention than a custodial arrest," the stops are analyzed under the principles articulated in Terry v. Ohio.  United States v. Chavez, 534 F.3d 1338, 1343 (10th Cir. 2008).  The two-pronged standard espoused in Terry v. Ohio, 392 U.S. 1 (1968), thus applies, see United States v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001), and renders a traffic stop reasonable if "the officer's action was justified at its inception, and [if] it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20; see also Chavez, 534 F.3d at 1343.  An initial traffic stop is justified at its inception if the officer has either "probable cause to believe a traffic violation had occurred or reasonable articulable suspicion the driver committed a traffic violation."  United States v. Clarkson, 551 F.3d 1196, 1201 (10th Cir. 2009).

Trooper Littrells's stop of McDaniel's HHR was justified at its inception because he had a reasonable suspicion McDaniel was violating K.S.A. 8-1522[3] by traveling in the left passing lane.  The video supports Littrell's testimony that McDaniel was driving in the left

---

[3] Where a highway such as this has two lanes for travel in the same direction, Kansas law generally requires vehicles to be driven in the right lane except when overtaking and passing another vehicle or when preparing to make a left turn.

lane when he was not actively passing a vehicle in the right lane.

Even when the initial stop is valid, any investigative detention must not last "longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983). An officer "conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation." United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005). The uncontroverted testimony shows that Littrell approached the HHR upon initially stopping it and then obtained McDaniel's driving documents. Littrell returned to his patrol vehcile to write out the warning ticket, which was appropriate. Littrell re-approached the HHR, returned the papers and issued the warning. Therefore, the scope of the traffic stop was reasonably related in scope to the circumstances which initially justified the interference. Terry, 392 U.S. at 20.

After the purpose of the traffic stop is complete, however, "further detention for purposes of questioning unrelated to the initial stop" is generally impermissible. Bradford, 423 F.3d at 1156-57. In general, "lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter." Hunnicutt, 135 F.3d at 1349.

In this case, the initial questioning was consensual. However, both McDaniel and Ness refused to consent to the search of the HHR and

-5-

were told by Littrell to not leave.  Therefore, the encounter changed to a detention.  Thus, the validity of the search and subsequent seizure of the currency turns on the existence of a reasonable and articulable suspicion of illegal activity.

In determining whether reasonable suspicion exists, the court looks to the "totality of the circumstances" to determine if Littrell had a "particularized and objective basis for suspecting legal wrongdoing."  United States v. Arvizu, 534 U.S. 266, 273 (2002).  Reasonable suspicion may exist even if each factor alone is "susceptible of innocent explanation."  Id. at 277 (stating that "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct").  A determination of reasonable suspicion to detain after a traffic stop should be based on the totality of the circumstances.  United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998).

In making the determination, each factor is not to be considered in isolation because even though one factor alone may be innocently explained, the factors considered together can support reasonable suspicion.  United States v. Lopez, 518 F.3d 790, 797 (10th Cir. 2008).  The court must "be careful to judge the officer's conduct in light of common sense and ordinary human experience but also to grant deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances."  Id.

After considering all of the circumstances surrounding the stop, the court finds that Littrell did not have reasonable suspicion to believe that the HHR contained narcotics.  Littrell based his suspicion on the fact that the HHR did not contain ski equipment, had

-6-

only one duffle bag, McDaniel was nervous or agitated, McDaniel's prior arrest, Denver is a source city for marijuana[4] and the fact that Denver was not a snowboarding destination. These items are not indicative of drug trafficking.

The lack of ski equipment and the existence of one duffel bag does not support the conclusion that McDaniel and Ness were lying about their reason for travel. McDaniel and Ness both stated that it was a short or mini vacation. The lack of ski equipment does not discredit their alleged plans because Ness stated that she was going to learn to snowboard, presumably she had never been snowboarding before. It is therefore entirely plausible that an individual who has not been snowboarding would rent equipment on the mountain instead of buying equipment prior to a short trip.

Littrell also stated that he was suspicious of their destination because there are no snowboarding resorts in Denver. Denver, however, is a short distance from numerous ski resorts. Therefore, it is entirely plausible that McDaniel and Ness were staying in Denver and going to the mountains to snowboard. Moreover, Littrell failed to ask any follow up questions on his suspicions, such as where Ness intended to snowboard. After a review of the video, the court does not find

---

[4] While this is undoubtedly true, its relevance is becoming shopworn because, based on the testimony in dozens' of similar motions, virtually every large city in every state has become a "known drug source." This is especially true for Denver now that Colorado has legalized marijuana. The same holds true for I-70 being a drug-trafficking "corridor." The court, based on testimony in other I-70 cases, recognizes that persons who have been stopped on I-70 have been found to be in possession of illegal drugs. However, given the volume of traffic on I-70 and its status as the only east-west interstate highway through Kansas, it is hard to consider it to be a drug "corridor."

-7-

that McDaniel and Ness' statements regarding their destination and reason for travel were sufficiently suspicious.

The remaining factors, nervousness or agitation, a 2009 arrest, and that Denver is a drug source are not sufficient to rise to the level of reasonable suspicion. United States v. Simpson, 609 F.3d 1140, 1147-48 (10th Cir. 2010)("Although a person with a criminal record could not be pulled over or detained based on the record itself, such a record is one factor that may justify further detention and that may cast a suspicious light on other seemingly innocent behavior."); United States v. Salzano, 158 F.3d 1107, 1113 (10th Cir. 1998)(The Tenth Circuit has "repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on . . . nervousness . . . must be treated with caution.")

Based on many cases, the court knows that experienced, well-trained officers such as Trooper Littrell have the ability to distinguish between innocent and suspicious circumstances. The court is always reluctant to make a ruling which seems to be second-guessing an officer who was on the scene. Nevertheless, this is one of those relatively rare cases where the totality of the circumstances does not give rise to reasonable suspicion. Accordingly, McDaniel's motion to suppress is granted. (Doc. 30).

IT IS SO ORDERED.

Dated this __7th__ day of August 2014, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-8-